

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00342-CV

_____

CAREY WILLIAMS, RAY COOK, JEFF BAKKER, GARY COCANOUGHER, MARK DUNCUM, AND CHRISTOPHER FORBIS, IN THEIR OFFICIAL CAPACITIES AS BOARD MEMBERS OF DECATUR HOSPITAL AUTHORITY D/B/A WISE HEALTH SYSTEM, Appellants

V.

EMOB DECATUR, L.P., Appellee

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV25-02-079

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Opinion by Justice Birdwell

## OPINION

Appellants Carey Williams, Ray Cook, Jeff Bakker, Gary Cocanougher, Mark Duncum, and Christopher Forbis, in their official capacities as board members of Decatur Hospital Authority d/b/a Wise Health System (the Board Members), appeal the trial court's order denying their plea to the jurisdiction, which asserted that the trial court lacked subject-matter jurisdiction over Appellee EMOB Decatur, L.P.'s ultra vires claim brought against the Board Members. Because we conclude that the trial court erred by denying the Board Members' plea to the jurisdiction, we reverse the trial court's order and render judgment granting the Board Members' plea to the jurisdiction and dismissing EMOB's claims.

## I. Background

Decatur Hospital Authority (the Authority) is a municipal hospital authority governed by a board of directors, the Board Members. The Authority operated a hospital in Decatur until November 2023 when it sold its hospital assets.[1]

In May 2016, the Authority entered into a lease with EMOB for a cancer center building. EMOB and the Authority amended the lease in 2020 and 2021 and extended the lease term to August 2036. When the Authority sold its hospital assets in 2023, the lease was not included in the sale, nor was the lease ever assigned or transferred to the purchaser.

---

[1]The Authority now operates a gymnasium and aquatics center, an office building, and various nursing facilities.

In January 2024, the Authority vacated the cancer center building. The Authority continued to pay rent to EMOB under the lease through December 2024. That month, the Board Members held a meeting and unanimously voted to approve the Authority's 2025 budget, which did not allocate funds for the Authority to continue paying rent under the lease.

When the Authority stopped paying rent in January 2025, EMOB sued the Board Members for declaratory relief alleging that the Board Members had committed ultra vires acts by not making "appropriate provisions" for the satisfaction of the Authority's financial obligations under the lease, in violation of Texas Health and Safety Code Section 262.0331. *See* Tex. Health & Safety Code § 262.0331(b)(1). EMOB sought a judgment declaring that the Authority's obligation to pay past and future rent under the lease are outstanding liabilities of the Authority, that the Authority has "not made appropriate provision[s] for the Authority's outstanding obligation to pay [r]ent under the [l]ease," that the Board Members' vote to approve the 2025 budget was an ultra vires act, and that until the Board Members make "appropriate provision[s]" for rent under the lease, any other expenditures are in violation of the statute and are therefore ultra vires.

The Board Members filed a plea to the jurisdiction asserting that the trial court did not have subject-matter jurisdiction over EMOB's lawsuit against them. The Board Members argued that their actions are not the proper subject of an ultra vires suit because the acts were discretionary and because "any relief to be gained in this

3

case is redundant of EMOB's claims in another case pending" before the trial court. Specifically, EMOB had a pending claim against the Authority for breach of the lease, which EMOB filed as a counterclaim in a suit initiated by the Authority to determine the enforceability of the lease.

The trial court heard the Board Members' plea to the jurisdiction and denied it, and the Board Members appealed.

## II. Standard of Review and Applicable Law

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction and is properly raised in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law we review de novo. *Id.* at 226.

A suit against a governmental employee in his official capacity is generally considered to be a suit against his governmental employer. *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011). An employee sued in his official capacity has the same governmental immunity, derivatively, as his governmental employer. *Id.* at 382–83. A narrow exception to this rule exists for ultra vires claims; even if immunity has not been waived by the legislature, a claim may be brought against a governmental employee if the employee engages in ultra vires conduct. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). A plaintiff in an ultra vires suit must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

4

"Ministerial acts" are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)). Conversely, "discretionary acts" are those that "require the exercise of judgment and personal deliberation." *Id.*

Governmental immunity protects exercises of discretion. *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163 (Tex. 2016); *Heinrich*, 284 S.W.3d at 372. As the supreme court has noted,

> [a]lthough only exercises of absolute discretion are absolutely protected, whether a suit attacking an exercise of limited discretion will be barred is dependent upon the grant of authority at issue in any particular case. And so many legislative grants of authority, although not absolute, will be broad enough to bar most, if not all, allegedly *ultra vires* claims.

*Hous. Belt & Terminal Ry.*, 487 S.W.3d at 164. Only when an employee acts beyond his granted discretion—in other words, when he acts without legal authority—are his acts not protected. *Id.* at 163; *Heinrich*, 284 S.W.3d at 372.

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is

5

required to do. *Id.* at 227. In a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If the evidence raises a fact issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019). However, if the evidence is undisputed or fails to raise a fact issue, then the trial court rules on the plea to the jurisdiction as a matter of law. *Id.*

### III. Discussion

The Board Members argue that the trial court erred by denying their plea to the jurisdiction because their vote on the 2025 budget was discretionary and cannot support an ultra vires claim. EMOB contends that the Board Members' vote was ultra vires because the Board Members failed to make "appropriate provisions" to satisfy the Authority's obligation to EMOB under the lease. *See* Tex. Health & Safety Code § 262.0331(b)(1).

### A. Health and Safety Code Section 262.0331

Section 262.0331 provides that after an authority's sale of a hospital, if the authority no longer owns or operates a hospital, the board "may use the authority's available assets to promote public health and general welfare initiatives that the board determines will benefit the residents served by the authority." *Id.* § 262.0331(a). However, the board may not make any such expenditure unless

6

(1) the board makes appropriate provisions for the satisfaction of any outstanding bonds, debt obligations, or other liabilities of the authority;

(2) the predominant purpose of the expenditure is to promote the public health and general welfare of the residents served by the authority; and

(3) the board establishes sufficient controls to ensure that the expenditure promotes the public health and general welfare of the residents served by the authority.

*Id.* § 262.0331(b).

## B. Appropriate Provisions

The legislature did not define "appropriate provisions" or include in the statute any requirements of or parameters for a hospital authority's board in deciding what constitutes "appropriate provisions." *See id.* § 262.0331. Further, no court has interpreted Section 262.0331. We therefore begin our discussion with statutory construction.

We review issues of statutory construction de novo. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). Our objective is to ascertain and give effect to the legislature's intent. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017); *see* Tex. Gov't Code § 311.023. When we interpret a statute, we look first to the plain language of the statute, construing the text in light of the statute as a whole. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). The statutory terms bear their common, ordinary meanings, unless the context of the statute provides different meanings or the common meanings lead to an absurd result. *Id.*; *see* Tex. Gov't Code § 311.011(a) (providing that statutory words and phrases "shall be read in context and

7

construed according to the rules of grammar and common usage"). We may not impose our own judicial meaning on a statute by adding words not contained in the statute's language. *Silguero*, 579 S.W.3d at 59. If the statute's language is unambiguous, we must interpret it according to its terms, presuming that the legislature intended for each word in the statute to have a purpose and that the legislature purposefully omitted words not included in the statute. *Id.*; *Lippincott*, 462 S.W.3d at 509.

The common, ordinary meaning of "appropriate" is "especially suitable or fitting." *See Tanzin v. Tanvir*, 592 U.S. 43, 49, 141 S. Ct. 486, 491 (2020) ("'Appropriate' means '[s]pecially fitted or suitable, proper.'" (quoting 1 Oxford English Dictionary 586 (2d ed. 1989))); *Tex. Dep't of Ins. v. Jones*, 498 S.W.3d 610, 615 (Tex. 2016) ("The adjective 'appropriate' denotes that which is 'specially suitable' with respect to the word or phrase it modifies."); *Appropriate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/appropriate (last visited July 2, 2026) (defining "appropriate" as "especially suitable or compatible"); *Appropriate*, Dictionary.com, https://www.dictionary.com/browse/appropriate (last visited July 2, 2026) (defining "appropriate" as "suitable or fitting for a particular purpose"). The common, ordinary meaning of "provision" is "an arrangement or measure taken to deal with or meet a need." *See Provision*, Merriam-Webster, https://www.merriam-webster.com/dictionary/provision (last visited July 2, 2026) (defining "provision" as "the fact or state of being prepared beforehand" or "a measure taken beforehand to deal with a need or contingency"); *Provision*, Dictionary.com,

https://www.dictionary.com/browse/provision (last visited July 2, 2026) (defining "provision" as "something provided; a measure or other means for meeting a need"). Read together, "appropriate provisions" means suitable measures taken to meet a need.

In the context of Section 262.0331(b)(1), the adjective "appropriate" necessarily limits the noun "provisions." *See* Tex. Gov't Code § 311.011(a). A provision must be appropriate "for the satisfaction of any outstanding bonds, debt obligations, or other liabilities of the authority" after the sale of its last or only hospital. Tex. Health & Safety Code § 262.0331(a), (b)(1). The term "appropriate" is a "quintessentially 'context dependent' term." *Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204, 218, 144 S. Ct. 2071, 2083 (2024). "One does not need to open up a dictionary in order to realize the capaciousness of this phrase." *Michigan v. Env't Prot. Agency*, 576 U.S. 743, 752, 135 S. Ct. 2699, 2707 (2015) (referring to the phrase "appropriate and necessary"). "'[A]ppropriate' is the classic broad and all-encompassing term that naturally and traditionally includes consideration of all the relevant factors." *Id.*, 135 S. Ct. at 2707 (internal quotation marks omitted).

The term "appropriate" leaves the decision-maker with flexibility when deciding what is appropriate. *See id.*, 135 S. Ct. at 2707; *see also Rodriguez v. Doe*, 614 S.W.3d 380, 385, 386 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (holding that phrase "necessary or appropriate" in Family Code statute conferred broad discretionary authority on trial courts issuing protective orders); *Machete's Chop Shop,*

9

*Inc. v. Tex. Film Comm'n*, 483 S.W.3d 272, 284 (Tex. App.—Austin 2016, no pet.) (holding that statute authorizing film commission to deny grant applications for "inappropriate content" called for the "exercise of the [c]ommission's discretion"); *Sw. Paper Stock, Inc. v. Zoning Bd. of Adjustment of City of Fort Worth*, 980 S.W.2d 802, 808 (Tex. App.—Fort Worth 1998, pet. denied) (holding that statute permitting zoning board to make special exceptions to zoning ordinance "in appropriate cases" gave board discretionary authority); *Casas v. Gilliam*, 869 S.W.2d 671, 674 (Tex. App.—San Antonio 1994, no writ) (op. on reh'g) (concluding that statute directing city paramedic to transport patient to closest hospital that could provide "appropriate emergency care" conferred discretionary authority on paramedic). "Discretionary authority exists when the law does not specify the precise action that the official must take." *Finlan v. Dall. Indep. Sch. Dist.*, 90 S.W.3d 395, 409 (Tex. App.—Eastland 2002, pet. denied).

Here, while Section 262.0331 provides that the Board Members "may not" make expenditures unless they "make[] appropriate provisions for the satisfaction of" outstanding debts or liabilities, it does not specify the precise provisions that the Board Members must take for the satisfaction of those debts or liabilities. *See id.*; *cf. Hodges v. Thompson*, 932 S.W.2d 717, 720 (Tex. App.—Fort Worth 1996, no writ) (determining that statute specifying that "[n]o signature may be counted" if certain condition was not met was a mandatory provision and not discretionary).

EMOB relies on *Texas Department of Insurance v. Jones* for the position that "appropriate" in Section 262.0331(b)(1) limits the Board Members' discretion and

requires that the provisions made by the Board Members must "actually 'provide for' the 'satisfaction' of the debt or liabilities." 498 S.W.3d at 615. The statute at issue in *Jones*—a workers' compensation statute—requires that trial courts may not approve workers' compensation settlements except on a finding that "the settlement adheres to all appropriate provisions of the law." *Id.* at 614. The supreme court determined that the statute's use of "appropriate" limits a trial court's discretion to approve the settlements. *Id.* at 615. But the workers' compensation statute provides a "precise formula that governs the calculation of the amount . . . to which injured workers are entitled." *Id.* Here, nothing in Section 262.0331 limits the Board Members to any such formula or calculation, nor does it "provide[] a tight framework" for what the Board Members may determine to be "appropriate." *Cf. id.* at 614.

Throughout Chapter 262 of the Health and Safety Code, the legislature has conferred broad discretionary authority on an authority's board of directors. *See* Tex. Health & Safety Code § 262.012(b) (allowing board to prescribe "the method of selecting the directors and the term of office of those directors"), § 262.022(c) ("The board may lease a hospital, or part of a hospital, owned by the authority . . . under terms that are satisfactory to the board and the lessee."), § 262.023 (granting board discretion to hire employees and to delegate management and employment authority), § 262.029 (conferring discretion on board to "accept gifts and endowments to hold and administer as required by the respective donors"), § 262.033 (conferring discretion on board to sell or close a hospital, or part of a hospital, owned by the

11

authority), § 262.042 (granting board voting authority to adopt resolution authorizing revenue bonds). Section 262.0331 itself confers discretionary authority on the board to make expenditures after the sale of a hospital. *Id.* § 262.0331(a) ("[T]he board may use the authority's available assets to promote . . . initiatives *that the board determines* will benefit the residents served by the authority . . . ." (emphasis added)). It follows that the legislature's use of the term "appropriate" in Section 262.0331(b)(1) confers discretion on the board to determine what provisions the board should take for the satisfaction of the authority's outstanding bonds, debt obligations, or other liabilities.

## C. The Jurisdictional Evidence

The Board Members' plea to the jurisdiction challenged the existence of jurisdictional facts and included evidence on the jurisdictional issue. The Board Members submitted the following evidence: (1) EMOB's original petition; (2) the affidavit of Todd Scroggins, the Authority's CEO; (3) EMOB's fourth amended answer, counterclaim, and third-party petition in the separate lawsuit filed by the Authority; (4) an exhibit from the deposition of Jeffrey Echt, who had negotiated and signed the lease on behalf of EMOB; and (5) an excerpt from Echt's deposition.

In response to the Board Members' plea to the jurisdiction, EMOB made several objections to the evidence submitted by the Board Members. On appeal, EMOB contends that the trial court abused its discretion by denying EMOB's

12

objections to "evidence that was conclusory and without foundation."[2] Specifically,

EMOB complains of the following statements in Paragraphs 4 and 5 of Scroggins's

affidavit:

> 4. . . . The budget was approved after balancing and considering numerous factors, including the public purposes of the Authority's expenditures, how to best spend the Authority's funds to advance public purposes, and along with consultation with counsel, legal issues such as the constitutionality of continuing the Lease, the continuing enforceability of the Lease, and the likelihood of the Authority having liability for the entire lease term. . . .
>
> 5. . . . Continuing to pay any amount under the Lease has no public benefit and returns no benefit to the Authority. The Authority is not using the leased space for any reason, and there is no benefit to the Authority or public purpose served by continuing to pay for the leased space.

EMOB filed objections to these statements, which as to Paragraph 4 were that

the testimony lacked foundation and was conclusory. As to Paragraph 5, EMOB's

objections were that the testimony was vague, misleading, conclusory, and ambiguous.

The trial court overruled EMOB's objections.

Even in the plea-to-the-jurisdiction context, we review a trial court's rulings to

admit or exclude evidence under an abuse of discretion standard. *Gonzalez ex rel.*

*Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017); *DeSoto Wildwood Dev.,*

*Inc. v. City of Lewisville*, 184 S.W.3d 814, 827 (Tex. App.—Fort Worth 2006, no pet.)

---

[2]EMOB raised this complaint as an alternative issue "if [this court] finds . . . error in the trial court's denial of the plea to the jurisdiction." Because we must consider the evidence submitted by the parties to resolve the jurisdictional issues raised in the plea, *see Tex. Dep't of Parks & Wildlife*, 133 S.W.3d at 227, we address the evidentiary issue first.

(op. on reh'g). A trial court abuses its discretion if it acts "without reference to any guiding rules and principles." *Swaim*, 530 S.W.3d at 678 (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). The erroneous admission or exclusion of evidence constitutes reversible error only if the error was harmful. *See* Tex. R. App. P. 44.1(a). Generally, a successful challenge to a trial court's evidentiary ruling requires the complaining party to show that the entire case turns on the complained-of evidence. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (op. on reh'g); *In re Commitment of Hale*, No. 02-21-00373-CV, 2023 WL 2325199, at *11 (Tex. App.—Fort Worth Apr. 27, 2023, pet. denied).

With regard to Paragraph 4, EMOB argues that Scroggins's affidavit, which "purports to explain" the Board Members' decision to vote to approve the 2025 budget, "contains no basis for how [Scroggins] knows the motivations of" the Board Members. Thus, according to EMOB, Scroggins lacked personal knowledge, and the trial court erred by overruling EMOB's objection that the complained-of statements in Paragraph 4 were "without foundation." We disagree.

In his affidavit, in addition to generally stating that the facts contained therein were within his personal knowledge, Scroggins testified that

- He was the CEO of the Authority;

- Prior to becoming CEO, he served as the Authority's CFO "for years";

- He had worked for the Authority since 2005;

14

- "Based on [his] roles and responsibilities through the years as both CEO and CFO for the Authority, [he was] personally aware of and familiar with the terms of the Lease and the Authority's funds and accounts available to pay for the Lease"; and

- Specifically related to his role as CFO, he had "direct knowledge of the Authority's annual budgets and its lease payments under the Lease."

These statements are sufficient to demonstrate Scroggins's personal knowledge of the facts stated in Paragraph 4. *See Brewer v. Green Lizard Holdings, L.L.C.*, 406 S.W.3d 399, 402 (Tex. App.—Fort Worth 2013, no pet.) ("A corporate employee is generally presumed to possess personal knowledge of facts that he or she would learn in the usual course of employment without having to otherwise prove personal knowledge."); *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 698 (Tex. App.—Dallas 2008, no pet.) (concluding that personal knowledge requirement was satisfied by affiant's stating in his affidavit that he was CEO of appellee company and had knowledge of its operations and organization); *Stucki v. Noble*, 963 S.W.2d 776, 780 (Tex. App.—San Antonio 1998, pet. denied) ("The personal knowledge requirement is satisfied if the affidavit sufficiently describes the relationship between the affiant and the case so that it may be reasonably assumed that the affiant has personal knowledge of the facts stated in the affidavit."). Accordingly, the trial court did not abuse its discretion by overruling EMOB's objections to Paragraph 4.[3]

---

[3]In its brief, EMOB contends that "even if the[ Board Members] had stated that was the basis of their decision, Scroggins's testimony as to such statements would have been excludable as hearsay." Because Scroggins is not repeating what someone

As to Paragraph 5, EMOB argues that Scroggins "fails to establish facts on which he bases his conclusions and instead simply states his conclusion that they provide no benefit." Even if we were to agree and conclude that the trial court abused its discretion by overruling EMOB's objections to Paragraph 5, any error would be harmless. *See* Tex. R. App. P. 44.1(a). EMOB cannot show that the entire case turns on—or, had the trial court granted the Board Members' plea to the jurisdiction, would have turned on—Scroggins's statements in Paragraph 5. *See Interstate Northborough P'ship*, 66 S.W.3d at 220; *Commitment of Hale*, 2023 WL 2325199, at *11. Indeed, having considered the other relevant evidence submitted by the parties, we conclude that the trial court erred by denying the Board Members' plea to the jurisdiction.

## D. Analysis

The Board Members contend that it was within their discretion to determine the appropriate provisions to satisfy the Authority's liabilities, if any, under the EMOB lease and that, in exercising their discretion, they (1) continued to make rent payments for a year after the Authority's default to provide EMOB time to find a new tenant and (2) initiated a lawsuit against EMOB to address the extent of the Authority's liability, if any, under the lease. Thus, according to the Board Members,

---

else said, the hearsay rule is not implicated. *See* Tex. R. Evid. 801; *DeSoto Wildwood Dev.*, 184 S.W.3d at 828. To the extent that EMOB attempts to raise a hearsay objection on appeal, EMOB failed to preserve that objection because EMOB did not raise it in the trial court. *See* Tex. R. App. P. 33.1.

their vote to approve the 2025 budget after making these provisions was discretionary and cannot support EMOB's ultra vires claim. We agree.

As discussed above, Section 262.0331(b)(1) conferred discretion on the Board Members to determine what provisions they should have made for the satisfaction of the Authority's liabilities under the lease. In the exercise of their discretion, the Board Members determined that the following provisions were appropriate: continuing to pay rent under the lease for one year after the Authority defaulted and initiating a lawsuit against EMOB to determine the extent, if any, of the Authority's alleged liability under the lease. The Board Members then voted to approve a 2025 budget that did not provide for continuing payments under the lease but instead purported to "promote public health and general welfare initiatives that the [B]oard [Members] determine[d] would benefit the residents served by the [A]uthority." Tex. Health & Safety Code § 262.0331(a). Because the Board Members acted within the discretionary authority conferred on them by Section 262.0331(b)(1), their actions cannot support EMOB's ultra vires claim.

EMOB contends that "satisfaction of" the Authority's financial obligations means that the Authority's liabilities under the lease must be "paid in full"—that is, the Authority is liable for the full payment of rent due for the entire lease term. The Board Members, however, dispute the Authority's liabilities under the lease. *See* Tex. Prop. Code § 91.006 (providing that a landlord has a duty to mitigate damages); *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997) (op. on

17

reh'g) ("A landlord should not be allowed to collect rent from an abandoning tenant when the landlord can, by reasonable efforts, relet the premises and avoid incurring some damages.") But the question of the extent of the Authority's liabilities under the lease is not before this court. Indeed, we do not yet know the full extent of the Authority's liabilities under the lease, if any, as that is a question to be determined in the separate lawsuit filed by the Authority; thus, we have no way to measure how "appropriate" the Board Members' actions were. Tex. Health & Safety Code § 262.0331(b)(1).

Even if the Board Members were wrong about the extent of the Authority's liabilities under the lease, such an erroneous decision is not an ultra vires act. *See McRaven*, 508 S.W.3d at 242 ("When the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous."); *Lopez v. Sosa*, No. 05-22-00295-CV, 2023 WL 3914553, at *5 (Tex. App.—Dallas June 9, 2023, pet. denied) (stating that not every legal mistake is an ultra vires act). "In order to act without legal authority in carrying out a duty to interpret and apply the law," the Board Members "must have exercised discretion 'without reference to or in conflict with the constraints of the law authorizing [them] to act.'" *McRaven*, 508 S.W.3d at 242 (quoting *Hous. Belt & Terminal Ry.*, 487 S.W.3d at 163). Nothing in Section 262.0331(b)(1) prohibited the Board Members from considering or disputing the Authority's potential liabilities—or lack thereof—when determining what provisions

18

would be appropriate for the satisfaction of those liabilities. *See* Tex. Health & Safety Code § 262.0331; *McRaven*, 508 S.W.3d at 242; *cf. Hous. Belt & Terminal Ry.*, 487 S.W.3d at 163 (concluding that the official's discretion was limited by explicit constraints).

Contrary to EMOB's assertion, Section 262.0331(b)(1) did not require that all the Authority's liabilities under the lease, if any, be fully paid off before the Board Members could "use the [A]uthority's available assets to promote public health and general welfare initiatives." *See* Tex. Health & Safety Code § 262.0331. Rather, it required only that the Board Members "make[] appropriate provisions for the satisfaction of" those liabilities. *Id.* While Section 262.0331(b)(1) did not grant the Board Members authority to decide not to make any provision whatsoever to satisfy the Authority's liabilities, that was not the case here. That EMOB did not agree with the provisions that the Board Members ultimately made does not make the Board Members' acts ultra vires.

We conclude that the Board Members did not exceed their authority under Section 262.0331 and therefore did not act ultra vires. Accordingly, the Board Members' acts were protected by governmental immunity, and the trial court did not have subject-matter jurisdiction over EMOB's claims against them. The trial court thus erred by denying the Board Members' plea to the jurisdiction.

## IV. Conclusion

We reverse the order denying the Board Members' plea to the jurisdiction and render judgment granting the Board Members' plea to the jurisdiction and dismissing for lack of subject-matter jurisdiction EMOB's claims against the Board Members.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: July 9, 2026